IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANCIS BASSEY,

   *Plaintiff*,

  v.               **Civil No.: 1:25-cv-02598-JRR**

AMAL AWAD, *et al.*,

   *Defendants*.

## <u>MEMORANDUM OPINION</u>

Pending now before the court is Defendant Anne Arundel County Government (the "County"), Asha Smith, Amy Lukas, Brad Rattell, Michael Ashburn,[1] Tim Schultz, Amal Awad, and Travis Ott's (collectively, "Defendants")[2] Amended Motion to Dismiss at ECF No. 11 (the "Motion").[3] The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025).

## I. <u>BACKGROUND</u>[4]

On August 6, 2025, Plaintiff Francis Bassey initiated this action against 13 Defendants: Amal Awad, Tim Shultz, Travis Ott, Michael Ashburn, Daren Roach, Heather Robinson, Michael Shier, Matthew Hall, Brad Rattell, James Campbell, Amy Lukas, Asha Smith, and Anne Arundel

---

[1] Defendants refer to Defendant "Michael Ashurn," *see* ECF No. 11 at p. 1, but the Plaintiff's Complaint refers to Defendant "Michael Ashburn," *see* ECF No. 1 at p. 4. Where it is not clear whether Defendants contend this Defendant's name is misspelled in Plaintiff's Complaint or if this is a typographical error, the court will refer to Defendant Ashburn as he is identified in the Complaint.

[2] As discussed at greater length below, Defendants Daren Roach, Heather Robinson, Michael Shier, Matthew Hall, and James Campbell have not appeared. For purposes of the instant Motion, unless otherwise specified, "Defendants" refers to the moving Defendants.

[3] As set forth below, Defendants filed a motion to dismiss prior to Plaintiff filing what the court construed as two supplements to his Complaint. (ECF Nos. 5, 9, 10.) Defendants then filed the instant amended Motion. The motion to dismiss at ECF No. 5 will therefore be denied as moot.

[4] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint and Supplements thereto. (ECF Nos. 1, 9, 10.) *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

County Government (the "County"). (ECF No. 1 at pp. 2–10.) Although Plaintiff does not expressly set forth individual counts in his Complaint, he asserts the following bases of the court's jurisdiction: Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, 18 U.S.C. § 242, and "Title 20 of the state government annotated code of Maryland," which the court understands to refer to the Maryland Fair Employment Practices Act ("MFEPA").[5] (ECF No. 1 at p. 4.) Plaintiff contends he was subjected to discrimination based on his race ("African"), color (Black), sex (Male), national original (Nigerian), age (year of birth: 1978), and disability (anxiety and depression). *Id.* at p. 12.

Based on the foregoing, the court construes Plaintiff to assert the following claims: race, color, national origin, and sex discrimination in violation of Title VII; retaliation in violation of Title VII;[6] age discrimination in violation of the ADEA; disability discrimination in violation of the ADA; race discrimination in employment and retaliation in violation of 42 U.S.C. §1981; race discrimination in employment in violation of 42 U.S.C. § 1983; race, color, national origin, sex,

---

[5] Plaintiff also identifies the Non-Discrimination/Non-Harassment provision of the Anne Arundel County Code. (ECF No. 1 at p. 4.) This appears to refer to Article 6, Section 6-1-102 of the Anne Arundel County Code, titled "Nondiscrimination," which provides:

> It is the policy of the County, for the maintenance of business and good government, to assure persons an equal opportunity in receiving employment with the County and in receiving promotions and other personnel action within the County's merit system, that there will be no discrimination on the basis of age, ancestry, citizenship, color, creed, disability, familial status, gender identity or expression, marital status, national origin, occupation, race, religion, sex, sexual orientation, or source of income.

ANNE ARUNDEL CNTY. CODE § 6-1-102. As Plaintiff does not express that he intends to invoke some private right of action under this provision, or that one exists, the court does not construe Plaintiff to seek to bring a standalone count under this section of the County's code.

[6] Based on the court's reading of Plaintiff's Complaint, it understands his claims of retaliation to stem from his protected activity related to reporting race discrimination to his employer. (ECF No. 1 at p. 12, 15; ECF No. 9 at p. 4; ECF No. 10 at p. 1.) The court construes this claim accordingly.

age, and disability discrimination, as well as retaliation, in violation of MFEPA; and violation of

18 U.S.C. § 242.

Although they are unclear and at times contradictory, the court endeavors to set forth the

factual bases of Plaintiff's claims here.[7] Plaintiff alleges several claims of differential treatment

from white police officers, including as follows:

- Between 2020 and 2021, a white supervisor wrote Plaintiff up for speeding.  That supervisor had previously told a white officer (Richard Scott), "even though you speed, you are lucky we like you here."  (ECF No. 9 at p. 2.)

- Between 2022 and 2023, Plaintiff was questioned by supervisor Defendant Robinson (white) while Plaintiff was conducting business away from the district station; white officers were not so questioned.  (ECF No. 9 at p. 2.)  Additionally, Robinson "tells white offers to falsify report time to work."  *Id.* at p. 3. Yet Robinson, along with Roach, Shier, and Hall, "wrote a false narrative of [Plaintiff] not being at work and they accus[ed] [him] of not being truthful."  *Id.*

- In 2022 and 2024, Plaintiff was denied training that white officers were not denied.  (ECF No. 9 at 2.)

- In 2023, someone with the County police department wrote Plaintiff up for not completing a police report; a white officer who was on the same call (John Becler) was not written up.  (ECF No. 9 at p. 2)

- The County denied Plaintiff's transfer requests four times in 2022 and 2023.  (ECF No. 9 at 1.)  The County approved the transfer request of a white male officer (Ryan Seal) who was "similarly situated."  (ECF No. 9 at p. 1.)  At unidentified times, the County demoted Plaintiff and gave him unfavorable assignments, while "white, younger officers were granted promotions, transfers[,] and training."  (ECF No. 1 at p. 14.)

---

[7] Plaintiff filed a series of documents attached to his Supplements that are not expressly referenced or identified in his Complaint or Supplements.  Plaintiff identifies these documents as "evidence" of his claims.  (ECF Nos. 9, 10.)  These documents are of course not a substitute for setting forth a short and plain statement of Plaintiff's claims as required by the Federal Rules of Civil Procedure, and it is not the role of the court to sift through Plaintiff's documents to decide what allegations (if any) Plaintiff wishes the court to draw from the documents or determine how the documents may be utilized to provide a factual basis for Plaintiff's Complaint.  *See Saunders v. Wilson*, No. 2:21-CV-00261, 2024 WL 4472358, at *7 (S.D.W. Va. June 24, 2024), *report and recommendation adopted,* No. 2:21-CV-00261, 2024 WL 4274698 (S.D.W. Va. Sept. 24, 2024) (noting it is not the court's "duty to comb through the attached documents to try to ascertain facts to support a plausible claim for relief"); *McDow v. Nevarez*, No. 2:20CV583 (RCY), 2021 WL 2416857, at *1 (E.D. Va. June 11, 2021) (noting that "although the exhibits to Plaintiff's Complaint could shed some additional light on Plaintiff's intended claims, neither the Court nor Defendants should be required to sift through Plaintiff's exhibits to determine the factual and legal bases for Plaintiff's lawsuit"); *Jones v. Gen. Elec. Co.*, No. CV ELH-19-196, 2019 WL 6918490, at *13 (D. Md. Dec. 19, 2019) (noting "it is not the Court's job to dig through plaintiff's voluminous filings to unearth the material facts giving rise to plaintiff's lawsuit").

Plaintiff also alleges other inappropriate treatment by supervisors.  Specifically, Plaintiff alleges: Defendants Ott, Roach, Robinson, and Shier "falsely accus[]ed" him of "poor work performance and not completing reports" (ECF No. 1 at p. 14); Defendants Rattell and Campbell refused to provide Plaintiff "required equipment" while he was at work (ECF No. 1 at p. 15); and a white female supervisor (Kristina Josa) threatened to physically harm Plaintiff and fight him while at work (ECF No. 9 at p. 1).  Additionally, Plaintiff asserts that he was "mocked while at work" about his "African accent" and "national origin" (ECF No. 1 at p. 14), and that police units were sent to his home to accuse him (falsely) of not being at work (ECF No. 9 at p. 3).  Plaintiff seemingly reported some of these matters to his supervisor, Defendant Robinson, in March 2023, and to Defendant Shier in March 2024.  (ECF No. 1 at p. 14; ECF No. 9 at p. 1.)  Plaintiff also contends Defendant Shier forged Plaintiff's signature on a performance evaluation as a form of race discrimination and retaliation (ECF No. 1 at p. 14; ECF No. 10 at p. 2), and that the County "denied [him] due process" when it failed to take action on his application for criminal charges related to same.  (ECF No. 1 at p. 14.)

The final category of Plaintiff's allegations appears to pertain to handling of accommodation requests.  Plaintiff alleges he requested an accommodation of medical retirement due to his anxiety and depression, which was denied by Defendants Awad, Lukas, and Smith, but a white officer (Saifeldin Hussain) was granted medical retirement and "non black officers" were "given a dog to cope."  (ECF No. 1 at pp. 14–15; ECF No. 9 at p. 4.)  Plaintiff also appears to reference an accommodation request for a "light duty assignment." (ECF No. 1 at p. 15.)

Plaintiff's allegations regarding his termination are unclear.  Plaintiff asserts he was demoted from police officer to civilian in 2023 (ECF No. 9 at p. 4), and that during this time Defendant Ott "advised outside police agency" that Plaintiff was under criminal investigation and

the County police department advised the Maryland Police Commission that Plaintiff resigned during an open police criminal investigation (ECF No. 1 at p. 15; ECF No. 9 at p. 4). Plaintiff also appears to allege, however, that he was not terminated until October 2024. (ECF No. 9-1 at p. 9.) Plaintiff was purportedly terminated because he was not physically capable of performing the required work. *Id.* Plaintiff believes this, as well as the pending state of his application for service-connection disability, "was a form of racial discrimination and retaliation." (ECF No. 10 at p. 1.)

Plaintiff initiated this action on August 6, 2025. Defendants the County, Ashburn, Awad, Lukas, Ott, Rattell, Schultz, and Smith then filed a motion to dismiss. (ECF No. 5.) Plaintiff later filed two "Amendments" to his claims (ECF Nos. 9, 10), which were docketed as Supplements. The above-referenced Defendants then filed the instant amended Motion to dismiss Plaintiff's Complaint, to include his allegations set forth in the supplements. (ECF No. 11.) Plaintiff did not respond to or otherwise oppose the Motion.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that

5

'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## III.   ANALYSIS[8]

While Defendants purport to seek dismissal of Plaintiff's Complaint in full, their substantive arguments are limited to Plaintiff's claims of race and age discrimination, and allegations pertaining to Plaintiff's 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 18 U.S.C. § 242 claims. (ECF No. 11-1 at pp. 6–7.) For clarity, the court will proceed through each identified legal basis for recovery, beginning with Plaintiff's Title VII claims.

### A.  Title VII Claims

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against

---

[8] This court is mindful of its obligation to construe liberally the pleadings of self-represented litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (first quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); and then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326–27 (4th Cir. 2018).

### 1. Disparate Treatment Claims

As discussed above, Plaintiff alleges discrimination based on race, color, sex, and national origin. "A plaintiff may prove discrimination through either of two methods: (1) direct evidence of discrimination, or (2) through the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973)], and its progeny." *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025) (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019)). "Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Cole v. Fam. Dollar Stores of Md., Inc.*, 811 F. App'x. 168, 175 (4th Cir. 2020) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999)).

Absent direct evidence, as is the case here, a plaintiff must establish a *prima facie* case pursuant to the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Pursuant to the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). The elements of a prima facie case of discrimination include: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'" *Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 815 (4th Cir. 2026) (quoting *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025)). "[A]t the motion to dismiss stage, a plaintiff need not establish a prima facie case," but rather must "produce sufficient allegations, accepted as

true, to state 'a claim to relief that is plausible on its face.'" *Id.* at 819 (quoting *Iqbal*, 556 U.S. at 678).    Nonetheless, "reference to the elements of a Title VII claim is helpful to gauge the sufficiency of the allegations." *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 734 (D. Md. 2023).

Defendants challenge Plaintiff's allegations on the fourth element. "To allege that an employer acted because of an employee's protected status, there must be some connective thread between the alleged mistreatment and the protected status." *Brooks v. United Parcel Service Inc.*, No. CV DKC 20-2617, 2021 WL 4339194, at *12 (D. Md. Sept. 23, 2021) (citations omitted)). "In other words, the facts alleged must 'support a *reasonable inference* that the decisionmakers were motivated by bias.'" *Copes v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, No. CV RDB-23-2306, 2025 WL 19987, at *4 (D. Md. Jan. 2, 2025) (emphasis in original) (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015)).

Allegations that may support a plausible reasonable inference of unlawful discrimination include those that "similarly-situated employees outside the protected class received more favorable treatment," *Johnson*, 163 F.4th at 815 (quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)), or any other factual allegations that Defendants acted with an unlawful discriminatory motive, *see Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 573 (4th Cir. 2023), such as "a general pattern of racial discrimination in the practices of a defendant." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017), *as amended* (Aug. 11, 2017) (quoting *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017)).    Plaintiff's allegations here focus on the former.[9]

---

[9] Excepting comparators, the only allegation Plaintiff makes that bears on a potentially unlawful discriminatory motive appears to be that he was mocked at work regarding his African accent and national origin. (ECF No. 1 at p. 14.)  This allegation, however, fails to provide any basis to reasonably infer that Defendant (or any supervisor) engaged in such conduct.  It therefore does not support a plausible inference of discriminatory motive.

To support an inference of discrimination, "there must be 'sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence." *Johnson*, 163 F.4th at 815 (quoting *Swaso*, 698 F. App'x at 748). "While there is no 'bright-line' rule for what makes two comparators 'similar' for purposes of Title VII claims," the Fourth Circuit has instructed court to consider whether the employees:

> (i) held the same job description,
> (ii) were subject to the same standards,
> (iii) were subordinate to the same supervisor, and
> (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.

*Id.* (quoting *Spencer v. Virginia State University*, 919 F.3d 199, 207 (4th Cir. 2019)). Further, claims involving disparate employee disciplinary treatment require that "the plaintiff's prohibited conduct was comparable in seriousness to misconduct of employees outside the protected class," and that "the disciplinary measures enforced against the plaintiff were more severe than those enforced against the other employees." *Seabrook v. Driscoll*, 148 F.4th 264, 270 (4th Cir. 2025) (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)).

While Plaintiff makes repeated assertions of white officers being subject to more favorable treatment, Plaintiff fails to support these conclusions with allegations of fact. Plaintiff vaguely contends he was denied trainings that white officers received. (ECF No. 9 at 2.) In the absence of any detail, this is insufficient to support a plausible inference that "similarly-situated employees outside the protected class received more favorable treatment." *Johnson*, 163 F.4th at 815, *supra*. The same problems arise with Plaintiff's conclusory assertion that Defendants denied his transfer requests, demoted him, and gave him unfavorable assignments while "white, younger officers were granted promotions, transfers[,] and training." (ECF No. 1 at p. 14.) Plaintiff's Complaint lacks

9

the requisite factual basis to support these assertions; there are no factual allegations to support a reasonable or plausible inference that these officers were similarly situated with Plaintiff or, for example, any information about their relative job responsibilities and qualifications that would support such an inference.  Plaintiff allegation that a white officer was "similarly situated" is conclusory and insufficient.  (ECF No. 9 at p. 1.)  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient).

Plaintiff's allegations regarding more severe disciplinary measures fare no better.  With regard to his claim that he was written up for speeding, Plaintiff's allegation that a white officer who had previously sped was liked does not support a reasonable or plausible inference that Plaintiff was subject to more severe disciplinary measures.  Even assuming the two were subject to the same standards as police officers, *see Johnson*, 163 F.4th at 817, Plaintiff does not provide any factual allegation that the white officer had previously been caught speeding or even that he was not subject to any sort of disciplinary action related to same.  *See Seabrook*, 148 F.4th at 270, *supra*.  Additionally, Plaintiff's assertion that white officers were not questioned while conducting business away from the district station is similarly devoid of any factual detail upon which to support a plausible inference that he was on the receiving end of more severe disciplinary treatment.  (ECF No. 9 at p. 2.)   Finally, Plaintiff contends he was written up for not completing a police report while an officer on the same call was not.  This is unsupported by any allegation that the white officer was required to complete a report (like Plaintiff), or that the same supervisor oversaw both officers.  And even were the court to conclude this assertion did provide a factual basis to support the allegation that Plaintiff was disciplined more severely than a white officer for the same offense, that is hardly sufficient to support a plausible inference of race discrimination

10

by Defendants because Plaintiff does not even identify any particular Defendant or supervisor connected to this allegation.

Based on the foregoing, Plaintiff has not plausibly alleged unlawful discrimination in violation of Title VII. While Plaintiff points to additional allegations of purported disparate treatment, such allegations are devoid of a factual foundation on which to rest an inference of unlawful discriminatory motive. Plaintiff's self-serving conclusory assertions (*e.g.*, his belief that Defendant Shier forged his signature as a form of racial discrimination, *see* ECF No. 1 at p. 14) is insufficient. For these reasons, Plaintiff has failed to state a claim of race, national origin,[10] or color discrimination under Title VII.

Additionally, Plaintiff's allegations fail entirely to identify, or allege the existence of, a similarly situated comparator outside of his sex whom he asserts was subject to different treatment. More simply, Plaintiff's allegations of comparators do not include allegations pertaining non-male police officers. Outside of that, the Complaint simply lacks allegations (even conclusory ones) of a sex-based discriminatory motive. He therefore has similarly failed to state a claim of sex discrimination under Title VII.

### 2. Retaliation Claims

As discussed above, Title VII also prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). As with discrimination claims, a plaintiff "may prove that an employer took action with . . . retaliatory intent through direct evidence or through

---

[10] The court acknowledges that Plaintiff did not identify purported comparators by national origin. Nonetheless, where Plaintiff's allegations appear to refer to these concepts interchangeably, the court considers his allegation of comparators to pertain to each of these protected classes.

the burden-shifting framework of *McDonnell Douglas*." *Strothers*, 895 F.3d at 327. The elements of a prima face case of retaliation under this same framework include: "(1) she engaged in protected activity, (2) the employer took adverse action against her, and (3) a causal relationship existed between the protected activity and the adverse employment action." *Johnson*, 163 F.4th at 819 (citing *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). A retaliation claim "may survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) even if the complaint does not allege facts sufficient to establish the *McDonnell Douglas* framework's prima facie case." *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024). "At bottom, in order to adequately plead a Title VII retaliation claim, the complaint must 'allege[ ] facts supporting a plausible inference that [the employer took an adverse . . . action against the plaintiff] 'because' of [the plaintiff's] protected activity.'" *Id.* (alterations in original) (quoting *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022)).

Defendants offer no challenge to Plaintiff's Title VII retaliation claims. *See* ECF No. 1 at p. 12, 15; ECF No. 9 at p. 4; ECF No. 10 at p. 1. Therefore, the court constrains its analysis accordingly, and Plaintiff's retaliation claims will proceed.

### B. ADEA Claims

"The ADEA prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age 'because of' the person's age." *E.E.O.C. v. Baltimore Cnty.*, 747 F.3d 267, 272 (4th Cir. 2014) (quoting 29 U.S.C. §§ 623(a)(1), 631(a)). Like a Title VII claim, where a plaintiff lacks direct evidence of age-based discrimination, his claims may proceed pursuant to the *McDonnell Douglas* burden-shifting framework. *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023). Such framework proceeds in three steps: "(1) the plaintiff must first establish a prima facie case of [age discrimination]; (2) the burden of

production then shifts to the employer to articulate a non-discriminatory . . . reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory." *Id.* (alterations in original) (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). "To survive a Rule 12(b)(6) motion to dismiss for failure to state an ADEA claim, [a plaintiff] is not required to plead a prima facie case of discrimination," but rather must simply "allege facts to satisfy the elements of a[n] [ADEA] cause of action." *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020) (alterations in original) (first quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); and then quoting *McCleary-Evans*, 780 F.3d at 585). These elements include that "the plaintiff is (1) over the age of 40, and (2) experienced discrimination by an employer (3) because of his age." *Id.* (first citing *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006); and then citing 29 U.S.C. § 623(a)(1)).

As with Plaintiff's Title VII claims, Defendants challenge that Plaintiff has plausibly alleged that he experienced discrimination because of his age. The court agrees. Plaintiff offers no allegations pertaining to any age-based discriminatory motive or comparators that would support such an inference. Plaintiff makes a single reference that "white, younger officers were granted promotions, transfers[,] and training" while he was not (ECF No. 1 at p. 14); however, this allegation is devoid of factual basis with regard to the promotions, transfers, and training at issue, or to support that the younger white officers were similarly situated. Plaintiff therefore fails to plausibly state a basis on which a reasonable inference could be drawn that he was subject to discrimination because of his age. *See Martin v. Networks Presentations, LLC*, No. CV ELH-25-3473, 2026 WL 2103589, at *55 (D. Md. July 21, 2026) (noting that, to survive a motion to dismiss, "there must be 'some connective thread between the alleged mistreatment and the

13

protected status, in order to state an "actionable claim for discrimination'") (citation omitted).  The Motion will be granted on that basis.

### C.  Disability Discrimination

The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual on the basis of a disability."  42 U.S.C. § 12112(a).  As part of this requirement, an employer is also obliged "to provide their disabled employees with reasonable accommodations that enable them to fulfill the essential duties of their positions."  *Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 166 (4th Cir. 2024) (citing 42 U.S.C. § 12112(b)(5)(A)).  A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The court construes the Complaint to assert ADA claims based on two theories: wrongful discharge and failure to accommodate.

Defendants offer no challenge to the sufficiency of Plaintiff's disability discrimination claims as pled.  Rather, Defendants contend that because his claims relate to his requested medical retirement and separation from County employment, these claims must be dismissed for failure to exhaust administrative remedies through the EEOC.  (ECF No. 11-1 at pp. 7–8.)  The court does not appear to have Plaintiff's EEOC charge before it (or, at a minimum, Defendants provide no citation to it); the court is therefore unable to discern the merits of this argument.  Accordingly, Plaintiff's disability claims will proceed.

### D.  Claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and MFEPA

Defendant further urge that Plaintiff has failed to offer allegations to support claims under 42 U.S.C. § 1981 or 42 U.S.C. § 1983.  (ECF No. 11-1 at p. 7.)  For the reasons Plaintiff's Title

14

VII and ADEA claims fail, his claims based on the same facts for relief under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and MFEPA similarly fail.

### 1. *Section 1981 and 1983 Claims*

Relevant here, § 1981(a), which provides that all persons shall have the same right to make and enforce contracts, *see* 42 U.S.C. § 1981(a), "prohibits discrimination in employment on the basis of race." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551–52 (4th Cir. 2006); *see Lewis v. Ports Am. Chesapeake, LLC*, No. CV GLR-22-3288, 2024 WL 1012882, at *3 (D. Md. Mar. 7, 2024) (same); *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 156 (4th Cir. 2018) (noting that "[a]lthough Section 1981 does not explicitly use the word 'race,' the Supreme Court has construed the statute to ban all racial discrimination in the making of public and private contracts," including "race-based employment discrimination") (citations omitted). As with a Title VII race discrimination claim, a plaintiff may seek relief under § 1981 through the *McDonnell Douglas* burden-shifting framework. *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

As to 42 U.S.C. § 1983, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n.3 (1979)). It "provides a cause of action against '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State' deprives someone of a federal constitutional or statutory right." *Lindke v. Freed*, 601 U.S. 187, 194 (2024) (quoting 42 U.S.C. § 1983). "Public employees enjoy the protection of antidiscrimination statutes such as Title VII as well as the protection of the Constitution, which they may enforce against their employers in civil actions pursuant to 42 U.S.C. § 1983." *Wilcox v. Lyons*, 970 F.3d 452, 457 (4th Cir. 2020). Indeed, "[a] plaintiff may have

concurrent claims for employment discrimination under Title VII and Section 1983." *Magassouba v. Prince George's Cnty.*, 773 F. Supp. 3d 196, 227 (D. Md. 2025).

Specifically, "[a] public employee may bring a claim of employment discrimination under § 1983 and the Equal Protection Clause." *Weathersbee v. Baltimore City Fire Dep't*, 970 F. Supp. 2d 418, 429 (D. Md. 2013) (citing cases); *see Gordon v. Maryland State Police*, No. CV GLR-22-1699, 2023 WL 6161089, at *9 (D. Md. Sept. 21, 2023), *aff'd sub nom.*, 179 F.4th 263 (4th Cir. 2026) (same). The Equal Protection Clause of the Fourteenth Amendment mandates that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. "Distinctions on the basis of race . . . are subject to the strictest judicial scrutiny." *Wilcox v. Lyons*, 970 F.3d 452, 458 n.4 (4th Cir. 2020). "To state an equal protection claim, a plaintiff must allege facts establishing that [he] has been treated differently from others with whom [he] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Gordon*, 2023 WL 6161089, at *9 (quoting *Windsor v. Bd. of Educ. of Prince George's Cnty.*, No. TDC-14-2287, 2016 WL 4939294, at *11 (D. Md. Sept. 13, 2016)).

Relevant to the court's analysis here, "[t]he framework of proof for claims of intentional employment discrimination brought under § 1981 and § 1983 is the same as the framework applicable to a Title VII claim." *Weathersbee*, 970 F. Supp. 2d at 430; *see Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (noting that for discrimination claims brought under the *McDonnell Douglas* framework under the three federal statues, "the elements required to establish such a case are the same under all three statutes").

Accordingly, here, where Plaintiff's § 1981 and §1983 claims are redundant to his Title VII claims, the deficiencies in Plaintiff's pleading as to his Title VII discrimination claims similarly impair his § 1981 and § 1983 claims. His failure to allege facts to support a plausible or

16

reasonable inference of unequal treatment based on a discriminatory motive similarly causes his claims to fail.[11] *See Love-Lane*, 355 F.3d at 786, *supra*; *Magassouba*, 773 F. Supp. 3d at 227–28 ("Courts may apply the standards developed in Title VII litigation to similar litigation under § 1983.") (quoting *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994)); *Gordon*, 2023 WL 6161089, at *9 ("Gordon and Jones' §§ 1981 and 1983 claims are redundant to their Title VII racial discrimination claims, and Plaintiffs who do not prevail under Title VII cannot prevail under §§ 1981 or 1983."); *Brown v. Bratton*, No. 21-1998, 2022 WL 17336572, at *11 (4th Cir. Nov. 30, 2022) ("Appellant's equal protection claims pursuant to § 1983 and the MDR are governed by the Title VII analysis set forth above."); *Settle v. Baltimore Cnty.*, 34 F. Supp. 2d 969, 995 (D. Md. 1999), *aff'd sub nom. Harris v. Earp*, 203 F.3d 820 (4th Cir. 2000), and *aff'd sub nom. Settle v. Baltimore Cnty. Police Dep't*, 203 F.3d 822 (4th Cir. 2000) ("To the extent he does not prevail under Title VII, he can not prevail on his equal protection claims.").

To the extent, however, Plaintiff's § 1981 claim is based on his allegations of retaliation for complaining about race discrimination in his employment, such a claim is cognizable under 42 U.S.C. § 1981. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (holding that "42 U.S.C. § 1981 encompasses claims of retaliation"); *Rozdilsky v. Liquidity Servs., Inc.*, No. CV 22-3355-TDC, 2026 WL 482940, at *8 (D. Md. Feb. 20, 2026) ("Claims for retaliation for complaining about employment discrimination are also cognizable under § 1981."). On this point, Defendants mount no argument. Plaintiff's Complaint will therefore proceed as to his § 1981 retaliation claim.

---

[11] While "the scope of [these] laws is not identical," *see Wilcox v. Lyons*, 970 F.3d 452, 462 (4th Cir. 2020), these distinctions are not, as far as this court discerns, material upon the analysis and deficiencies identified here.

### 2. *MFEPA Claims*

Maryland employers are similarly prohibited from discrimination based on race, national origin, color, sex, disability, and age, as well as retaliation, under MFEPA, MD. CODE ANN., STATE GOV'T § 20-606.  Under MFEPA, an employer "may not . . . fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of," relevant here, the individual's race, color, sex, age, national origin, or disability, *see id.* § 20-606(a)(1)(i), or "retaliate against any of its employees . . . because the individual has" opposed a prohibited practice or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subtitle," *id.* § 20-606(f).  "[C]ourts interpret the MFEPA consistent with its federal corollary, absent 'legislative intent to the contrary." *Doe v. Cath. Relief Servs.*, 484 Md. 640, 680–81 (2023). "Maryland courts have thus applied federal frameworks in evaluating employment discrimination claims under both federal and state discrimination laws." *Mulamba v. Bd. of Educ. of Baltimore Cnty.*, No. 1656, Sept.term,2023, 2024 WL 5103270, at *4 (Md. Ct. Spec. App. Dec. 13, 2024), *cert. denied,* 490 Md. 288 (2025), and *cert. denied,* 146 S. Ct. 184 (2025) (referring to federal frameworks in assessing plaintiff's federal and state discrimination claims).

Thus, in the same way Plaintiff's discrimination claims fail under Title VII and the ADEA, they fail under the MFEPA.[12] *See Maryland Dep't of Health v. Best*, 264 Md. App. 181, 224 (2024) (noting that "[i]n cases where the evidence of discrimination is circumstantial rather than direct, Maryland courts apply the three-step burden-shifting analysis first articulated in *McDonnell*

---

[12] Where the MFEPA materially departs from the language of Title VII, "the MFEPA is not read in lockstep with the federal statute." *Watrous v. AIRtec, Inc.*, No. CV TJS-24-2076, 2025 WL 2494324, at *10 (D. Md. Aug. 28, 2025) (citing *Doe v. Cath. Relief Servs.*, 484 Md. 640, 657–58 (2023)).  Any such differences, however, are not at issue here where the core challenge is directed to a basic element under each—discriminatory action because of a protected status.

*Douglas*") (quoting *Belfiore v. Merchant Link, LLC*, 236 Md. App. 32, 45 (2018)); *Nganga-Kongo v. Univ. of Maryland Med. Sys. Corp.*, 827 F. Supp. 3d 593, 607 (D. Md. 2026) ("Discrimination claims under the Maryland Fair Employment Practices Act are evaluated under the Title VII standard, including the case law interpreting Title VII."); *Martin v. Networks Presentations*, No. CV ELH-25-3473, 2026 WL 2103589, at *20 (D. Md. July 21, 2026) (noting that "the analysis of ADEA and ADA discrimination claims follow the same framework as a Title VII claim," and "claims brought under MFEPA use the same legal frameworks as claims brought under Title VII, the ADEA, and the ADA") (citations omitted).

Accordingly, Plaintiff's MFEPA claims for discrimination based on race, color, national origin, sex, and age discrimination fail to state any claim under MFEPA. The Motion will be granted on that basis. To the extent, however, that Plaintiff seeks to state MFEPA claims based on disability discrimination and retaliation, neither of which Defendants challenge, the Motion will be denied. *See* MD. CODE ANN., STATE GOV'T §§ 20-606(a)(4), (f) (providing an employer may not "fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee" or "retaliate against any of its employees . . . because the individual has" engaged in protected activity under MFEPA). Plaintiff's MFEPA claims based on disability discrimination and retaliation will therefore proceed.

### E.  Claim under 18 U.S.C. § 242

Finally, Defendants contend that Plaintiff makes no allegations to support a claim under 18 U.S.C. § 242. (ECF No. 11-1 at p. 7.) While their argument is rather rote and conclusory, the court agrees. The referenced statute—18 U.S.C. § 242—is a criminal statute that does not provide Plaintiff a private right of action. *See, e.g.*, *Burnett v. Edward A. Garmatz United States Dist. Courthouse*, No. CV 25-1068-BAH, 2025 WL 1134564, at *3 (D. Md. Apr. 17, 2025) (discussing

19

same); *Turner v. Beal*, No. 18-cv-100, 2018 WL 10156104, at *2 (E.D. Va. Oct. 12, 2018) (discussing same).  Accordingly, any claim under this provision fails a matter of law.  The Motion will be granted on that basis.

### F.  Claims against Defendant Shultz and Ashburn

Beyond the substantive arguments addressed above, Defendants also argue that Plaintiff alleges no facts as to Defendants Schultz and Ashburn.  (ECF No. 11-1 at p. 7.)  Defendants are correct.  While Defendants Schultz and Ashburn are both identified as "police" (ECF No. 1 at pp. 3–4), Plaintiff fails to allege any action by them or related to them.  (ECF Nos. 1, 9, 10.)  Because Plaintiff has failed to allege any conduct by Defendants Schultz and Ashburn, he fails to state a plausible claim of relief against them.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that Rule 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'") (first quoting FED. R. CIV. P. 8(a)(2); and then quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

## IV.    SERVICE OF REMAINING DEFENDANTS

Defendants Daren Roach, Heather Robinson, Michael Shier, Matthew Hall, and James Campbell, have not yet appeared in this action.  With regard to Defendant Shier, Plaintiff has not filed proof of service.  (ECF No. 7.)  With regard to the other Defendants identified above, Plaintiff filed certificates of service on each wherein someone from the Anne Arundel County Sheriff's Office purportedly effected service on each of them by delivering and leaving process with "SGT M GIBBONS" and 8495 Veterans Highway in Millersville, Maryland.  (ECF No. 7 at p. 6–8, 10.)

Pursuant to Federal Rule of Civil Procedure 4(e), an individual may be served by following the state law for service,[13] or by "delivering a copy of the summons and of the complaint to the individual personally," "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process."  FED. R. CIV. P. 4(e).

Plaintiff has not provided proof that Defendants Roach, Robinson, Hall, and Campbell were personally served, or that the appropriate summons and Complaint were left at any individual's dwelling.  Additionally, there is nothing before the court to suggest that the individual identified as SGT M GIBBONS was authorized to accept service for Defendants Roach, Robinson, Hall, and Campbell.  Indeed, counsel for Defendants (who have appeared through counsel) advises they are not authorized to accept service on behalf of these individuals, some of whom are seemingly not a part of the County police department where Plaintiff sought to serve them.  (ECF No. 5 at p. 1 n.1; ECF Nos. 4, 7.)

Federal Rule of Civil Procedure 4(m) provides: "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  FED. R. CIV. P. 4(m).  *See also* Local Rule 103.8(a) (D. Md. 2025).  Federal Rule of Civil Procedure 41(b) provides: "If the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it."[14]  FED. R. CIV. P. 41(b); *see also* Local Rule 103.8(b) (D. Md. 2025).  Where

---

[13] The state law permits that service of process may be effected "by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: 'Restricted Delivery--show to whom, date, address of delivery.'"  MD. RULE 2-121(a).  Plaintiff has not sought to effect service by this means here.

[14] Relatedly, "a court has the 'inherent power' to dismiss an action for want of prosecution," power that it "derives from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019), *as amended* (June 10, 2019) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

Plaintiff has failed to file proof that service was effected upon Defendants Shier, Roach, Robinson, Hall, and Campbell, and more than 90 days have passed since the filing of Complaint, and more than nine (9) months have passed since Plaintiff took any action with regard to these remaining Defendants, the court will direct Plaintiff to show good cause why this action should not be dismissed as against Defendants Shier, Roach, Robinson, Hall, and Campbell for failure to serve and to prosecute.

V.      **CONCLUSION**

For the reasons set forth herein, by separate order, the Motion will be granted in part and denied in part.[15] The court will also order Plaintiff to show good cause why this action should not be dismissed as against Defendants Shier, Roach, Robinson, Hall, and Campbell.

August 4, 2026                                                    /S/

                                                  _____
                                                  Julie R. Rubin
                                                  United States District Judge

---

[15] Defendants seek dismissal with prejudice. (ECF No. 11-2.) The court declines to dismiss this action with prejudice. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court"). Defendants also make argument, without reference to any authority, pertaining to issues with Plaintiff's requests for relief. (ECF No. 11-1 at p. 8.) In the absence of any substantive argument, and where such challenges pertain to the relief Plaintiff seeks and not the claims asserted, the court declines to consider same in ruling on the pending Rule 12(b)(6) Motion.